UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FADI SHUMAN,

Plaintiff,

vs.

THE CITY OF NEW YORK, THE TRUSTEES OF COLUMBIA UNIVERSITY, UNIVERSAL PROTECTION SERVICE LLC d/b/a ALLIED UNIVERSAL SECURITY SERVICES , PINKERTON CONSULTING & INVESTIGATIONS INC., SHAKUR STOVES-BOSTON, CARLOS DELAROSA, PATRICK OAKLEY, MATHEW COLEMAN, CAMERON JOHNSON, EDGAR TRAPSH, DONALD GANNON, RICHARD GRANT, DALWAYNE WALCOTT, VICTOR GARCIA, and JOHN DOES 1-2, individually and in their official capacities,

Defendants.

**FIRST AMENDED COMPLAINT**

**Case No. 26-cv-03805 (JPC)**

Plaintiff FADI SHUMAN, by and through his attorneys, Cohen&Green P.L.L.C., The Aboushi Law Firm, P.L.L.C., and Gideon Orion Oliver, hereby complains of Defendants as follows:

## INTRODUCTION

1. Plaintiff Fadi Shuman ("Mr. Shuman") is a Palestinian-American student at Columbia University. On May 7th, 2025, while working on a final paper in Columbia's Butler Library, Mr. Shuman encountered a student pro-Palestine protest. Mr. Shuman began taking photographs of the protest. In response, Columbia police violently assaulted Mr. Shuman and arrested him on false grounds, and falsely charged him with violations of his school's disciplinary rules. Mr. Shuman brings this suit seeking redress for Defendants' misconduct.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), since Plaintiffs' federal and state law claims arise from a common nucleus of operative facts and are so intertwined as to make the existence of supplemental jurisdiction over the state law claims appropriate.

4. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) as Defendant City resides in this district and a substantial part of the events and/or omissions described herein occurred in this district.

**GENERAL MUNICIPAL LAW COMPLIANCE**

5. Plaintiff served a timely Notice of Claim on the municipal Defendant.

6. At least thirty days have elapsed since the service of Plaintiff's Notice of Claim, and adjustment and payment thereof has been neglected or refused.

7. Plaintiff has complied with all conditions precedent to commencing an action such as this one against Defendant City under New York law.

**JURY DEMAND**

8. Plaintiff demands a trial by jury in this action of all issues that are triable by jury.

**PARTIES**

9. Plaintiff Fadi Shuman ("Mr. Shuman"; he/him) is a Muslim, Palestinian-American student of Columbia University. At all relevant times mentioned herein, Mr. Shuman was enrolled in Columbia University School of General Studies.

10. Plaintiff is a resident of New York County, New York.

11. Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of ("City") the laws of the State of New York.

12. Defendant City maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all ("NYPD") functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, CITY OF NEW YORK.

13. Defendant The Trustees of Columbia University in the City of New York ("Columbia" or "Columbia University") is the legal name of Columbia University/Columbia, a private not-for-profit university based in New York, New York. Columbia University is composed of various graduate and undergraduate constituent schools, including Columbia College, the School of General Studies ("GS"), the School of Social Work ("CSSW"), the Graduate School of Architecture, Planning and Preservation ("GSAPP"), the School of Nursing, the School of Professional Studies ("SPS"), the School of Engineering and Applied Science, the School of the Arts, the Graduate School of Arts and Sciences, and the Mailman School of Public Health.

14. Defendant Universal Protection Service LLC d/b/a Allied Universal Security Services (hereinafter "Allied") provides security to commercial and corporate clients. Allied Universal is headquartered at 161 Washington Street, Suite 600, Conshohocken, PA 19428.

15. Upon information and belief, at all relevant times hereinafter mentioned, Defendant Allied contracted with Defendant Columbia and/or Defendant City of New York to provide security and related services at Columbia's campuses, including the campus and building where the incident complained of herein occurred.

16. Defendant Pinkerton Consulting & Investigations Inc. (hereinafter "Pinkerton") provides security to commercial and corporate clients. Pinkerton is headquartered at 101 North Main Street, Suite 300, Ann Arbor, MI. 48104.

17. Upon information and belief, at all relevant times hereinafter mentioned, Defendant Pinkerton contracted with Defendant Columbia and/or Defendant City of New York to provide security and related services at Columbia's campuses, including the campus and building where the incident complained of herein occurred.

18. Upon information and belief, Defendants PATRICK OAKLEY, MATHEW COLEMAN, CAMERON JOHNSON, EDGAR TRAPSH, DONALD GANNON, AND RICHARD GRANT, were, at all times relevant herein, employees of, and providing security and/or related services for Defendant Columbia.

19. Upon information and belief, Defendants SHAKUR STOVES-BOSTON and CARLOS DELAROSA were, at all times relevant herein, employees of, and providing security and/or related services for, Defendant Allied and/or Defendant Columbia.

20. Upon information and belief, Defendants DALWAYNE WALCOTT and VICTOR GARCIA were, at all times relevant herein, employees of, and providing security and/or related services for, Defendant Pinkerton and/or Defendant Columbia.

21. Upon information and belief, Defendant John Does 1-2, whose true names and identities are not fully known to Plaintiff at this time, were, at all times relevant herein, employees of, and providing security and/or related services for, Defendant Allied and/or Defendant Columbia, and/or Defendant Pinkerton.

22. Upon information and belief, some or all of Defendants SHAKUR STOVES-BOSTON, CARLOS DELAROSA, PATRICK OAKLEY, MATHEW COLEMAN, CAMERON JOHNSON, EDGAR TRAPSH, DONALD GANNON, RICHARD GRANT, DALWAYNE WALCOTT, VICTOR GARCIA, and JOHN DOES 1-2 (the "Individual Defendants") were trained by Defendant City and designated asSpecial Patrolmen, with police authority to arrest,

among other powers, pursuant to New York Criminal Procedure Law §2.10(27) (the "Special Patrolmen").

23. Each Individual Defendant is sued individually and in their official capacity.

24. At all times hereinafter mentioned, Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

25. Each and all of the acts and omissions of Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by Defendants City of New York, Columbia, Pinkerton, or Allied.

26. All Individual Defendants who were Special Patrolmen were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, and on behalf of, and with the power and authority vested in them by their employer(s) and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

27. The Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

28. At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

## STATEMENT OF FACTS

**The Federal Government Issues a Set of Demands Related to Columbia University's Policing, Security, and Disciplinary Practices Related to Palestine Speech on Campus, and Columbia Yields to those Demands**

29. On March 3, 2025, President Donald J. Trump's Joint Task Force to Combat Antisemitism announced a review of Defendant Columbia's federal contracts and grants because of what it characterized as Columbia's "ongoing inaction" in the face of alleged antisemitic harassment during "encampments and demonstrations."

30. The following day, President Trump posted on Truth Social that "All Federal Funding will STOP for any College, School, or University that allows illegal protests….American students will be permanently expelled."[2]

31. On March 7, Trump's Task Force announced the cancellation of $400 million in federal grants to Defendant Columbia University because of its "continued inaction."[3] News coverage indicated it was widely understood the grant cancellation was a direct result of Defendants' response to pro-Palestinian protests, in particular the occupation of Hamilton Hall on April 30, 2024, raising concerns that "First Amendment advocates see the Trump administration's move as an overreach designed to intimidate institutions and chill campus free speech."[4]

32. That same day, Defendant Columbia University's then-President Katrina Armstrong met with U.S. Education Secretary Linda McMahon, who publicly described the meeting as

---

[2] President Donald J. Trump (@realDonaldTrump), Truth Social (March 4, 2025 7:30 am), available at https://truthsocial.com/@realDonaldTrump/posts/114104167452161158 [last accessed August 13, 2025].

[3] Press Release, U.S. Dep't Educ., *DOJ, HHS, ED, and GSA Announce Initial Cancelation of Grants and Contracts to Columbia University Worth $400 Million: Members of the Joint Task Force to Combat Anti-Semitism take swift action to protect Jewish students in response to inaction by Columbia University* (Mar. 7, 2025), https://www.ed.gov/about/news/press-release/doj-hhs-ed-and-gsa-announce-initial-cancelation-of-grants-and-contracts-columbia-university-worth-400-million.

[4] *See, e.g.*, Jessica Blake, *Contract Cuts at Columbia Raise Concerns*, Inside Higher Ed (March 7, 2025) available at https://www.insidehighered.com/news/government/politics-elections/2025/03/07/trump-admin-cancels-400m-grants-columbia-u [last accessed December 20, 2025].

"productive" and stated "the Trump Administration will not allow continued harassment," a clear reference to the pro-Palestinian protests, which the Task Force repeatedly maligned and conflated with antisemitism.[5]

33. Several hours later, Armstrong sent an email stating that Respondent would work with the federal government to address its "legitimate concerns," placing strong emphasis on the policing and disciplinary process.[6]

34. On March 13, Trump's Task Force issued a "follow up" to Respondent formalizing the "precondition[s] for formal negotiations regarding [Defendant's] continued financial relationship with the United States government" and laying out nine demands with a one-week deadline[7] (hereinafter the "March 13 Letter").

35. One of those demands was that Defendant Columbia "expand the number of Columbia security personnel and grant[] them the ability to arrest and remove" students. *Id.*

36. The letter also directed Columbia to enforce disciplinary policies against students involved in Pro-Palestine demonstrations at Hamilton Hall and related encampments. The letter specifically demanded "meaningful discipline," defined as "expulsion or multi-year suspension." *Id.* (emphasis in original).

37. One week later, on March 21, 2025, Columbia University issued a letter in direct response to the "preconditions" set out by the federal government, titled "Advancing Our Work to

[5] Secretary Linda McMahon [@EDSecMcMahon], X (Mar. 7, 2025, 1:58pm), available at https://x.com/EDSecMcMahon/status/1898085962330038755 [last accessed December 20, 2025].

[6] Letter from Columbia Interim President Katrina Armstrong (March 7, 2025), available at https://president.columbia.edu/news/responding-federal-action [last accessed December 20, 2025].

[7] Letter from the GSA, U.S. Dept. HHS, and the U.S. Dept. Educ. to Dr. Katrina Armstrong, Interim President of Columbia Univ., David Greenwald & Claire Shipman, Co-Chairs of the Trs. Columbia Univ. (Mar. 13, 2025), available at https://s3.documentcloud.org/documents/2 5577971/31325-letter-to-columbia.pdf.

Combat Discrimination, Harassment, and Antisemitism at Columbia"[8](hereinafter, "March 21 Letter").

38. On that same date, describing Columbia's March 21 Letter, The House Committee on Education and Workforce posted the following on X: "Columbia FOLDS."[9]

39. Defendant Columbia had indeed succumbed to the Trump Task Force's demands, including the demand that Defendant Columbia hire public safety officers with law enforcement authority.

40. Pursuant to New York State's Peace Officers Law, the New York Police Department appointed at least 36 Columbia University employees as "special patrol[men][10] under NYCPL§ 2.10 (27).

41. The Special Patrolmen were appointed and sworn in by the NYPD Police Commissioner after undergoing "the NYPD's application process." [11]

42. These officers, "possess all powers and discharge all the duties" of NYPD patrol officers, while also being required to "obey all the rules and regulations of the department and conform to its general discipline." [12]

[8] "Office of the President, "Advancing Our Work to Company Discrimination, Harassment, and Antisemitism at Columbia" (March 21, 2025), available at https://president.columbia.edu/sites/default/files/content/03.21.2025%20Columbia%20-%20FINAL.pdf.

[9] House Committee on Education & Workforce (@EdWorkforceCmte), X (Mar. 21, 2025, 5:28 PM), available at https://x.com/EdWorkforceCmte/status/1903197127389450301.

[10] Jonathan Allen, *Columbia University adds 36 new campus patrol officers with powers of arrest*, Reuters (April 5, 2025, 8:36 PM EDT), available at https://www.reuters.com/world/us/columbia-universitys-new-campus-patrol-officers-appointed-by-new-york-police-2025-04-04/. [last accessed April 30, 2026]; *See also* Ria Vasishtha, *Columbia deploys 25 special patrol officers on campus*, Columbia Spectator (May 5, 2025, at 11:43 PM EDT), available at https://www.columbiaspectator.com/news/2025/05/05/columbia-deploys-25-special-patrol-officers-on-campus/. [last accessed April 31, 2026].

[11] Allen *supra* n.1

[12] *Id.*

43. They are authorized to arrest individuals and issue summonses and Desk Appearance Tickets ("DATs") and depending on the alleged offense, must bring detainees to a local NYPD precinct.[13]

44. Upon information and belief, some or all of the Individual Defendants were Special Patrolmen.

45. Upon information and belief, Defendants City, Columbia, Pinkerton, and/or Allied did not adequately train or supervise the Special Patrolmen with respect to probable cause to arrest, use of force, the right to record, and other related topics.

46. Beyond hiring special patrolmen, Columbia also issued the exact sanctions against Hamilton Hall protests as demanded by the federal government—expulsion or multi-year suspensions.

47. And as demanded by the March 13 Letter, Columbia unilaterally altered the disciplinary process related to protests, instituted a mask ban, and altered its curriculum and faculty for the Middle East, South Asian, and African Studies department.

48. As a result of Columbia's complete acquiescence to the federal government, Columbia was able to enter into negotiations for restoration of nearly a half-billion dollars in funding.

49. It was against that backdrop that Plaintiff's assault and arrest occurred.

**<u>Plaintiff's Assault and Arrest on May 7, 2025</u>**

50. On May 7, 2025, Mr. Shuman was seated in the Butler Library at Columbia University.

[13] Allen *supra* n.1; Vasishtha, *supra* n. 1.

51. "Columbia Police" refers to public safety officers who were employed by Columbia and/or Pinkerton and/or Allied providing security and related services on May 7, 2025, including the Special Patrolmen and the Individual Defendants.

52. At the time, Mr. Shuman was working on a final paper for his University Writing class when he saw and heard many Columbia Police enter the library.

53. Mr. Shuman then heard what he believed to be chants from another floor of the library.

54. Mr. Shuman, along with other students around him, took an elevator to the third floor.

55. Upon approaching the main reading room of the library, Mr. Shuman saw various Columbia Police obstructing access to the reading room.

56. The doors to the reading room, however, were open.

57. Inside, some people were engaging in a pro-Palestine protest.

58. Mr. Shuman, an independent photojournalist, took out his camera and began documenting the Columbia Police response to the protest in the reading room.

59. At the time, Mr. Shuman was wearing a *kuffiyeh* around his neck, which he wears on a daily basis, as part of his Palestinian heritage.

60. A *kuffiyeh* is a traditional Palestinian scarf worn by both men and women. It has historically been associated with the popular struggle for the liberation of Palestine.

61. Within minutes of Mr. Shuman's arrival, and without cause or warning, Defendant Boston suddenly tackled Mr. Shuman to the ground.

62. Defendant Boston tackled Mr. Shuman so aggressively that he caused both Mr. Shuman and another person who had been standing behind him to hit the ground.

63. Shortly thereafter, Columbia Police gave a direction to vacate the third floor.

64. Mr. Shuman complied, vacating the third floor and standing in the nearby stairway – close enough to the reading room that Mr. Shuman could continue documenting some of the Columbia Police response to the protest.

65. Mr. Shuman remained in the stairway for several hours, photographing what he could of that response in and around the reading room.

66. Then, without cause or warning, Defendant Oakley suddenly pointed at Mr. Shuman and directed Columbia Police, including Defendants Garcia, Walcott, and Grant, in substance, to remove Mr. Shuman, although there were other students standing in the same area.

67. As Mr. Shuman stood at the top of the steps, Defendant Garcia told Mr. Shuman, in sum and substance, "No one is going to help you if you fall."

68. Defendants Garcia, Walcott and Grant then surrounded Mr. Shuman and pushed and yanked him down the stairs.

69. On the second floor, Defendant Garcia placed Mr. Shuman in a chokehold, restricting his ability to breathe.

70. Then, Defendants Garcia, Walcott, Coleman, Johnson, Trapsh, and/or Gannon pushed Mr. Shuman down a hallway, as Defendant Grant and other Columbia Police blocked the entrance of the hallway, between Mr. Shuman and other students and bystanders.

71. Mr. Shuman feared for his life and began shouting for help.

72. Defendants Garcia, Walcott, Coleman, Johnson, Trapsh, Gannon, and/or Does 1-2 lifted Mr. Shuman up and slammed him onto the ground.

73. Defendants Garcia, Walcott, Coleman, Johnson, Trapsh, Gannon, and/or Does 1-2 held Mr. Shuman onto the ground for an extended period of time, pushing his head into the ground, choking him, and striking him.

74. Defendant Grant joined in on the assault, pressing his bodyweight into Mr. Shuman and pushing him into the ground.

75. During the minutes-long assault, other students, standing at the entrance of the hallway, begged Columbia staff members to allow them to make sure Mr. Shuman was okay, or to call emergency medical services, as Mr. Shuman screamed for help and gasped for air.

76. Columbia Police repeatedly ignored Mr. Shuman's screams or the pleas of his peers and classmates.

77. One student, a New York State certified Emergency Medical Technician ("EMT"), begged Columbia staff to allow her to access Mr. Shuman and render medical services, even showing Columbia staff her EMT license. She too was ignored.

78. As Mr. Shuman screamed behind them, one student desperately asked the Columbia staff members guarding the assault, "do you never get sick of doing this to your Palestinian students?"

79. Defendants Garcia, Walcott, Coleman, Johnson, Trapsh, Gannon, and/or Does 1-2 eventually placed Mr. Shuman in handcuffs and escorted Mr. Shuman to an elevator.

80. In the elevator, Mr. Shuman asked the Individual Defendants who were with him if he could sit because he believed he was going to fall over, and in fact lost consciousness.

81. Instead of helping Mr. Shuman, the Individual Defendants who were with him forcefully pushed him up against the elevator wall.

82. The Individual Defendants who were with him then placed Mr. Shuman in a public safety vehicle, at which point Mr. Shuman again began losing consciousness.

83. Defendants detained Mr. Shuman for several hours, eventually releasing him with two summonses.

84. Those summonses, sworn out by Defendant Delarosa, charged Mr. Shuman with two violations of the New York Penal Law -- trespass and disorderly conduct.

85. The very next day, on May 8, 2025, Mr. Shuman was issued an interim suspension order, effective immediately, alleging his participation in "disruptive protests" in Butler Library.

86. Mr. Shuman was immediately barred from all Columbia facilities and was deemed ineligible to participate in any classes or academic or extracurricular activities.

87. Mr. Shuman remained suspended until July 21, 2025, when, after a hearing, he was found "not responsible" for each of the violations with which he was charged.

88. Both criminal charges against Mr. Shuman were also dismissed and sealed on May 23, 2025.

89. As described above, Mr. Shuman sustained injuries to his physical and emotional well-being, as well as violations of his constitutional, common law, and statutory rights.

90. Defendants' conduct directly and proximately caused physical and emotional injuries to Plaintiff, including, but not limited to, pain, bruising, and injury to Mr. Shuman's head, face, hand, neck, and knee, and trauma and emotional distress.

91. Defendants' conduct also directly and proximately caused Mr. Shuman to suffer seruious delays and disruptions to his academic life and pursuits.

**Defendant Columbia's Response to the May 7th Demonstration, Including Defendants' Assault and Arrest of Plaintiff, were a Direct Response to the Trump Administration's Demands and Pressure**

92. The May 7th demonstration in Butler Library came at a time when the school was engaged in high-stakes negotiations with the Trump Administration over the future of its federal funding and autonomy.

93. Defendant Columbia's escalated crack down on the May 7th demonstration in Butler Library was a successful effort to appease the Trump administration by exhibiting full compliance

with its demands related to pro-Palestinian protestors.

94. On May 8, 2025, the day after the incident, the Trump administration praised Defendant's "strong and resolute" response to the protesters, saying the Acting President "has met the moment with fortitude and conviction." [14] The U.S. Department of Education Joint Task Force to Combat Anti-Semitism goes as far to say that it was "encouraged" and "confident that Columbia will take the appropriate disciplinary actions for those involved in this act."[15]

95. On May 23, Acting President Shipman addressed the U.S. Department of Health and Human Services and the Department of Education's announcement that they had determined that Defendant had violated Title VI of the Civil Rights Act "in connection with our actions in response to harassment of Jewish students since October 7, 2023." Shipman publicly reassured the community and the federal government that Defendant has "streamlin[ed] disciplinary processes to respond swiftly to violations of [the CRUC]" and "will act firmly."[16]

On May 23, Defendants proudly and publicly list "the University's quick actions to respond to and investigate the May 7, 2025 disruption of Butler Library" as an example of combating antisemitism.[17]

96. On July 23, 2025, Defendant announced they had entered an agreement with the

---

[14] U.S. Department of Education, *Joint Task Force to Combat Anti-Semitism Statement Regarding Columbia University* (May 8, 2025), available at https://www.ed.gov/about/news/press-release/joint-task-force-combat-anti-semitism-statement-regarding-columbia-university [last accessed December 20, 2025].

[15] *Id.*

[16] Office of the President, *An Update from Acting President Shipman on Our Commitment to Combatting Antisemitism*, (May 23, 2025), available at https://president.columbia.edu/news/update-acting-president-shipman-our-commitment-combatting-antisemitism [last accessed December 21, 2025].

[17] Office of the President, *Advancing Columbia University's Work to Combat Antisemitism*, available at https://president.columbia.edu/content/combatting-antisemitism?utm_source=MarketingCloud&utm_medium=email&utm_campaign=20250523-HHS-Message [last accessed December 21, 2025].

federal government.[18]

97. The settlement was characterized by Defendant Columbia's own Knight First Amendment Institution as one that came "at a very steep price to Columbia's autonomy and to the constitutional freedoms of Columbia's faculty, staff, and students."[19] "The federal government is seeking to reshape the internal operations of universities not through generally applicable directives, but rather through a series of bilateral 'deals.'"[20]

98. The UN OHCHR Special Rapporteurs concurred in this assessment, expressing concern "over the coercive measures taken by the US government against universities and the consequent actions by, for instance, Columbia University" and reiterating their "deep concern at the political pressure exerted on university administrators and academics to take certain positions and actions regarding the student protests on campuses on the situation in Gaza."[21] While agreeing that "[u]niversities must act firmly against all forms of racial and religious harassment, including antisemitism and Islamophobia," the Special Rapporteurs were "disturbed by the vague and overly broad use of the term 'antisemitism' to label, denounce and repress peaceful protests and other legitimate forms of expression of solidarity with Palestinians victims, calls for a ceasefire in Gaza or

---

[18] Claire Shipman, Acting President, Columbia University in the City of New York, *Resolution of Federal Investigations and Restoration of the University's Research Funding,* available at https://president.columbia.edu/news/resolution-federal-investigations-and-restoration-universitys-research-funding [last accessed August 13, 2025].

[19] Jameel Jaffer, Alex Abdo, et al., *What the Columbia Settlement Really Means, Knight First Amendment Institute at Columbia University*, (August 4, 2025), available at https://knightcolumbia.org/blog/what-the-columbia-settlement-really-means [last accessed December 21, 2025].

[20] David Pozen, *Regulation by Deal Comes to Higher Ed*, Balkinization (July 23, 2025), available at https://balkin.blogspot.com/2025/07/regulation-by-deal-comes-to-higher-ed.html [last accessed December 21, 2025].

[21] Noah Hurowitz, *The U.N. experts wrote blistering letters to five American universities about their crackdown on Gaza protests*, The Intercept (December 16, 2025 11:44 AM), available at https://theintercept.com/2025/12/16/un-human-rights-universities-columbia-gaza-protests/ [last accessed on April 30, 2026].

the legitimate criticism of the Government of Israel's policies and practices, including its conduct of the conflict in Gaza and allegations of genocide." (*Id.*).

## <u>FIRST CLAIM FOR RELIEF</u>

### New York City Administrative Code §§8-801, *et seq.,* Claims Against Defendant City, the Individual Defendants who were Special Patrolmen, and their Defendant Employer(s)

99. Mr. Shuman incorporates by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

100. New York City Administrative Code §8-803(a) through (c) provides as follows, in relevant part:

a. "A covered individual who, under color of any law, ordinance, rule, regulation, custom or usage, subjects or causes to be subjected, including through failure to intervene, any other natural person to the deprivation of any right that is created, granted or protected by section 8-802 is liable to the person aggrieved for legal or equitable relief or any other appropriate relief."

b. "The employer of a covered individual who, under color of any law, ordinance, rule, regulation, custom or usage, subjects or causes to be subjected, including through failure to intervene, any other natural person to the deprivation of any right that is created, granted or protected by section 8-802 is liable, based upon the conduct of such covered individual, to the person aggrieved for legal or equitable relief or any other appropriate relief."

c. "A person aggrieved may make a claim pursuant to subdivision a of this section in a civil action in any court of competent jurisdiction by filing a complaint setting forth facts pertaining to the deprivation of any right created, granted or protected by section 8-802 and requesting such relief as

such person aggrieved considers necessary to insure the full enjoyment of such right."

101. Given that a "covered individual" under §8-801 means "(i) an employee of the police department or (ii) a person who is appointed by the police commissioner as a special patrolman," each Individual NYPD Member or Special Patrolman is considered a covered individual. §8-801.

102. Plaintiff is a "person[s] aggrieved" because he was (at minimum) "allegedly subjected to, or allegedly caused to be subjected to, the deprivation of a right created, granted, or protected by §8-802 by a covered individual even if the only injury allegedly suffered by such natural person is the deprivation of such right." *Id.*

103. Defendant City and/or Defendant Columbia and/or Defendant Allied and/or Defendant Pinkerton is liable as an employer, as set out above.Defendants' use of force against Plaintiff was unjustified, unlawful, and objectively unreasonable, considering the facts and circumstances before Defendants.

104. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

105. Further, it is not a defense to liability under §§8-801 *et seq*. that a covered individual has qualified immunity or any other substantially equivalent immunity.

106. Thus, the Court should award both compensatory and punitive damages against all parties (including the City), and all reasonable fees and court expenses pursuant to §8-805 of the Administrative Code.

## <u>SECOND CLAIM FOR RELIEF</u>

### Violations of New York State Common Law
### False Arrest, False Imprisonment, and Unreasonable Detention

**Against All Defendants**

107. Plaintiff incorporates by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

108. The conduct of officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as security, police, and/or law enforcement officials, while they were acting as agents and employees of Defendant City and/or Defendant Columbia and/or and/or Defendant Pinkerton and/or Defendant Allied, cloaked with and/or invoking state power and/or authority, and, as a result, Defendant City and/or Defendant Columbia and/or Defendant Pinkerton and/or Defendant Allied are liable to Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

109. In performing the actions and behaviors described above, Defendants did falsely detain Plaintiff within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so.

110. Plaintiff additionally was conscious of the confinement.

111. Plaintiff did not consent to the confinement.

112. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

113. The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

**<u>THIRD CLAIM FOR RELIEF</u>**

**Violations of New York State Common Law**
**Assault**
**Against All Defendants**

114. Plaintiff incorporates by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

115. The conduct of officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as security, police, and/or law enforcement officials, while they were acting as agents and employees of Defendant City and/or Defendant Columbia and/or and/or Defendant Pinkerton and/or Defendant Allied, cloaked with and/or invoking state power and/or authority, and, as a result, Defendant City and/or Defendant Columbia and/or Defendant Pinkerton and/or Defendant Allied are liable to Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

116. Defendants placed Plaintiff in fear of imminent harmful or offensive contact.

117. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

118. The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FOURTH CLAIM FOR RELIEF

**Violations of New York State Common Law**
**Battery**
**Against All Defendants**

119. Plaintiff incorporates by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

120. The conduct of officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as security, police, and/or law enforcement officials, while they were acting as agents and employees of Defendant City and/or

Defendant Columbia and/or and/or Defendant Pinkerton and/or Defendant Allied, cloaked with and/or invoking state power and/or authority, and, as a result, Defendant City and/or Defendant Columbia and/or Defendant Pinkerton and/or Defendant Allied are liable to Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

121. Several Individual Defendants intentionally subjected Plaintiff to physical contact without his consent.

122. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

123. The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FIFTH CLAIM FOR RELIEF

### Violations of New York State Common Law
### Intentional and Negligent Infliction of Emotional Distress
### Against All Defendants

124. Plaintiff incorporates by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

125. The conduct of officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as security, police, and/or law enforcement officials, while they were acting as agents and employees of Defendant City and/or Defendant Columbia and/or and/or Defendant Pinkerton and/or Defendant Allied, cloaked with and/or invoking state power and/or authority, and, as a result, Defendant City and/or Defendant Columbia and/or Defendant Pinkerton and/or Defendant Allied are liable to Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

126. In performing the actions and behaviors described above, the Individual Defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Plaintiff.

127. The acts and conduct of Defendants were the direct and proximate cause of injury and damage to Plaintiff and violated Plaintiff's statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

128. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

129. The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SIXTH CLAIM FOR RELIEF

### Violations of the New York State Constitution Against All Defendants

130. Plaintiff incorporates by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

131. The conduct of officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as security, police, and/or law enforcement officials, while they were acting as agents and employees of Defendant City and/or Defendant Columbia and/or and/or Defendant Pinkerton and/or Defendant Allied, cloaked with and/or invoking state power and/or authority, and, as a result, Defendant City and/or Defendant Columbia and/or Defendant Pinkerton and/or Defendant Allied are liable to Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

132. Defendants' conduct, constituting state action,violated Plaintiff's rights pursuant to Article I, §§ 3, 6, 8, 9, 11, and/or 12 of the New York State Constitution.

133. A damages remedy here is necessary to effectuate the purposes of Article I, §§ 3, 6, 8, 9, 11, and/or 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiff's rights under those sections.

134. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

135. The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SEVENTH CLAIM FOR RELIEF

**Unlawful Seizure / False Arrest**
**Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution**
**Against All Defendants**

136. Plaintiff incorporates by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

137. The conduct of Defendants alleged herein occurred while they were acting under color of state law. Defendants seized and arrested Plaintiff without any judicial warrant.

138. Plaintiff was conscious of his confinement and did not consent.

139. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

140. The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## EIGHTH CLAIM FOR RELIEF

**Excessive Force**
**Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution**
**Against All Defendants**

141. Plaintiff incorporates by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

142. The conduct of Defendants alleged herein occurred while they were acting under color of state law.

143. Defendants' use of force against Plaintiff was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted them.

144. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

145. The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## NINTH CLAIM FOR RELIEF

**First Amendment**
**Pursuant to 42 U.S.C §1983 for Defendants' Violations of Plaintiff's Rights Under the First and Fourteenth Amendments to the United States Constitution**
**Against All Defendants**

146. Plaintiff incorporates by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

147. The conduct of Defendants alleged herein occurred while they were acting under color of state law.

148. Defendants imposed restrictions on Plaintiff's protected speech and/or conduct that violated Plaintiff's First Amendment rights.

149. Defendants' retaliatory restrictions Plaintiff complain of herein imposed upon Plaintiff's First Amendment rights to participate in, observe, and/or stand nearby speech, conduct, association, and/or other expressive activities protected by the First Amendment in public were themselves regulations on Plaintiff's protected conduct that:

a. Were viewpoint discriminatory and/or otherwise not content-neutral, and were not necessary, and precisely tailored, to serve compelling governmental interests, and/or were not the least restrictive means readily available to serve those interests; or,

b. Were content-neutral but nonetheless lacked sufficiently narrow tailoring to serve a significant governmental interest in that the restrictions substantially burdened more protected speech and/or conduct than was necessary to serve those interests, and/or failed to adequately provide alternatives for Plaintiff's protected expression, including in that Plaintiff's abilities to communicate effectively were threatened or limited; and/or

c. Afforded Defendants unbridled or otherwise inappropriately limited discretion to limit or deny Plaintiff's ability to engage in protected conduct (also raising constitutionally significant Due Process-based vagueness and/or overbreadth concerns); and/or

d. Amounted to the imposition of strict liability on Plaintiff for engaging in protected speech and/or expression.

150. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological

and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

151. The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## TENTH CLAIM FOR RELIEF

**First Amendment Retaliation**
**Pursuant to 42 U.S.C §1983 for Defendants' Violations of Plaintiff's Rights Under the First and Fourteenth Amendments to the United States Constitution**
**Against All Defendants**

152. Plaintiff incorporates by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

153. The conduct of Defendants alleged herein occurred while they were acting under color of state law.

154. Defendants retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment.

155. Defendants engaged in the acts and omissions complained of herein in retaliation for Plaintiff's protected speech and/or conduct.

156. Defendants engaged in the acts and omissions complained of herein in an effort to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

157. Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

158. Upon information and belief, Defendants engaged in the acts and omissions described herein with respect to Plaintiff's First Amendment-based claims with malice.

159. Upon information and belief, Defendants engaged in the acts and omissions described herein with respect to Plaintiff's First Amendment retaliation claims, in response to the perceived viewpoint and/or message expressed by Plaintiff.

160. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

161. The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## ELEVENTH CLAIM FOR RELIEF

**Municipal Liability**
**Pursuant to 42 U.S.C §1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978) for Defendants' Violations of Plaintiff's Rights Under the First, Fourth, and Fourteenth Amendments to the United States Constitution**
**Against Defendant City**

162. Plaintiff incorporates by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

163. All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed defendants pursuant to: (a) formal policies, rules, and procedures of Defendant City; (b) actions and decisions by Defendant City's policymaking agents; (c) customs, practices, and usage of the NYPD that are so widespread and pervasive as to constitute de facto policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City and other policymaking officials; (d) Defendant City's deliberate indifference to Plaintiff's rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by the City's failures, and the failures of the City's policymaking agents, to train, supervise,

and discipline NYPD officers, despite full knowledge of the officers' wrongful acts, as described herein.

164. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

## <u>TWELFTH CLAIM FOR RELIEF</u>

### Violations of Plaintiff's Right to Record Under New York Civil Rights Law § 79-P Against Defendant City, the Individual Defendants who were Special Patrolmen, and their Defendant Employer(s)

165. Plaintiff incorporates by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

166. Prior to Plaintiff's assault, battery, and arrest, Plaintiff was exercising his right under New York Civil Rights Law § 79-P, the New Yorker's Right to Monitor Act, to record law enforcement activity.

167. In arresting Plaintiff, the Special Patrolmen Defendants exceeded their authority because their conduct was inconsistent with New York Civil Rights Law § 79-P and the Federal Constitution.

168. The Special Patrolmen Defendants violated New York Civil Rights Law § 79-P in that Plaintiff was arrested while he "exercised or attempted to exercise the right established in subdivision two of this section to record a law enforcement activity and an officer acted to interfere with that person's recording of a law enforcement activity" in one of the specified ways.

169. New York Civil Rights Law § 79-P (a) defines "[o]fficer" as any peace officer, police officer, security officer, security guard or similar official who is engaged in a law enforcement activity."

170. The Special Patrolmen Defendants unlawfully arrested Plaintiff to deter him from exercising his right to record law enforcement activity.

171. New York Civil Rights Law § 79-P creates a private right of action that explicitly provides for punitive damages and injunctive relief, as well as mandatory attorneys' fees and expert fees.

172. New York Civil Rights Law § 79-P defines "record" and the related right in extremely broad terms.

173. Specifically, the law creates a right of action to sue for any law enforcement interference with the right, including "attempting to prevent [a] person from recording law enforcement activity." New York Civil Rights Law § 79-P(3)(i); *see also*, *id* § (iv).

174. Similarly, there is a cause of action where an officer — regardless of the fact of recording — engages in "commanding that the person cease recording law enforcement activity when the person was nevertheless authorized under law to record, as happened here. New York Civil Rights Law § 79-P(3)(iii).

175. Thus, the statute creates a right of action, and that right — like the similar First Amendment right — "does not depend on whether [a plaintiff's] attempt to videotape was frustrated" (*Gericke v. Begin*, 753 F.3d 1, 3 n.2 (1st Cir. 2014)), or for that matter, only intended to create the impression someone was recording.

176. Defendants' actions and policies alike violate New York Civil Rights Law § 79-P such that all the remedies available thereunder are appropriate.

177. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

178. The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRTEENTH CLAIM FOR RELIEF

**Violations of Plaintiff's Right to Record Under New York City Admin. C. § 14-189**

179. **Against Defendant City, the Individual Defendants who were Special Patrolmen, and their Defendant Employer(s)**Plaintiff incorporates by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

180. Prior to the assault, battery, and arrest, Plaintiff was exercising his rights under New York Civil City Administrative Code § 14-189, the Right to Record Police Activities.

181. In assaulting and arresting Plaintiff, the Special Patrolmen Defendants exceeded their authority because their actions were inconsistent with New York Civil City Administrative Code § 14-189.

182. The Special Patrolmen Defendants violated New York Civil City Administrative Code § 14-189 in that Plaintiff was arrested while he "recorded or attempted to record police activities in accordance with subdivision b and an officer interfered with such person's recording of police activities" in one of the specified ways.

183. New York City Admin. C. § 14-189 defines "officer" as "any peace officer or police officer as defined in the criminal procedure law who is employed by the city of New York, or any special patrolman appointed by the police commissioner pursuant to section 14-106."

184. The Special Patrolmen Defendants unlawfully arrested Plaintiff to deter him from exercising his right to record law enforcement activity.

185. New York Civil City Administrative Code § 14-189 creates a private right of action that explicitly provides for punitive damages and injunctive relief, as well as attorneys' fees and expert fees.

186. New York Civil City Administrative Code § 14-189 defines "record" and the related right in extremely broad terms.

187. Specifically, the law creates a right of action to sue for any law enforcement interference with the right, including "interfer[ing] with such person's recording of police activities." New York Civil City Administrative Code § 14-189(c)(1).

188. Similarly, there is a cause of action where an officer — regardless of the fact of recording — engages in "stopping, seizing, searching, issuing any summons, or arresting any individual because such individual recorded police activities," as happened here. New York Civil City Administrative Code § 14-189(c)(1)(a-c).

189. Thus, the code creates a right of action.

190. Defendants' actions and policies alike violate New York Civil City Administrative Code § 14-189 such that all the remedies available thereunder are appropriate.

191. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

192. The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

I. Actual and punitive damages against the Individual Defendants in an amount to be determined at trial;

II. Actual damages in an amount to be determined at trial against the City of New York, Columbia, Pinkerton, and Allied, and punitive damages pursuant to 42 U.S.C. §1988 and N.Y.C. Admin. C. §8-805(1)(ii);

III. Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia*, 42 U.S.C. §1988, N.Y.C. Admin. C. §8-805(2), and New York common law; and

IV. Such other and further relief as the Court may deem equitable, just, and proper.

Dated: August 20, 2026
Queens, New York

**COHEN&GREEN P.L.L.C.**

By: ________________________
Elena L. Cohen
J. Remy Green
Regina J. Yu
Leena M. Widdi
1639 Centre Street, Suite 216
Ridgewood, NY 11385
(929) 888-9480
elena@femmelaw.com
remy@femmelaw.com
regina@femmelaw.com
leena@femmelaw.com

**THE ABOUSHI LAW FIRM P.L.L.C.**

________________________
Tahanie A. Aboushi, Esq.
1441 Broadway, 5th Floor
New York, NY 10018
t: (212) 391-8500
tahanie@aboushi.com

*Attorneys for Plaintiff*

**GIDEON ORION OLIVER**

________________________
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com