Schilling Law LLC
NEW YORK

**Andrew W. Schilling**
810 Seventh Ave
Suite 305
New York, New York 10019

**By ECF**

September 3, 2026

The Honorable John P. Cronan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *Shuman v. The City of New York et al.*, No. 26-CV-03805-JPC (S.D.N.Y.)

Dear Judge Cronan:

In accordance with Individual Rule 6(A) of Your Honor's Individual Rules, we respectfully submit this letter on behalf of Defendant The Trustees of Columbia University in the City of New York ("Columbia") and individual defendants Patrick Oakley, Matthew Coleman, Cameron Johnson, Edgar Trapsh, Donald Gannon, and Richard Grant (the "CU Individual Defendants") (collectively with Columbia, "Columbia Defendants") to request a pre-motion conference regarding the Columbia Defendants' anticipated motion to dismiss the Amended Complaint (the "Complaint" or "Compl.").

**Background**

On May 7, 2025, during the reading period before final exams, more than 100 masked individuals pushed past security to converge on the main reading room of Columbia University's Butler Library. Once inside the reading room, these individuals began chanting, banging on instruments, shouting through megaphones, hanging banners, and generally creating a volatile and intimidating atmosphere. The disruption lasted several hours, interrupting the academic work of approximately 900 students and community members who were forced to evacuate, and resulted in significant property damage, including the widespread defacement of books and furniture. Eventually, the building had to be closed due to the deteriorating security situation.

Columbia Public Safety quickly responded to the disturbance by securing the reading room to prevent the disruption from spreading to other spaces within the library. Public Safety then informed the participants, in accordance with Columbia's policies, that they needed to present identification and exit the library. In response, many individuals swiped their university identification cards to exit and left the building. But dozens of others chose to remain, refusing to leave or to provide identification. Meanwhile, in response to calls on social media to "Flood Butler," a crowd formed outside and attempted to forcibly enter the library. At the same time, an individual inside the reading room used a bullhorn to encourage the crowd outside to "bust that shit down." By the end of the day, approximately 78 individuals involved in the disturbance were arrested and charged by the NYPD, and several Public Safety officers reported injuries.

Plaintiff Fadi Shuman was present in Butler Library during this disturbance. Although he was not one of the masked individuals inside the reading room, he attempted to push his way past the guards at its entrance but was prevented by security. By his own admission, Mr. Shuman received repeated requests from Public Safety to "vacate the third floor"; but he did not leave the

third floor, choosing instead to remain in the third-floor stairwell "for several hours." Compl. ¶¶ 63, 65. Because he refused to leave the floor voluntarily, Mr. Shuman was escorted by Public Safety down the stairway to the second floor, where he was restrained. Compl. ¶¶ 63–65, 68, 79. He was then removed from Butler, detained pending issuance of a summons, and issued summonses for trespass and disorderly conduct, which were later dismissed. Compl. ¶¶ 83–84, 88. Throughout the incident, Mr. Shuman resisted the Public Safety officers, which necessitated the use of reasonable force to remove him.

Mr. Shuman now brings claims under federal and state law against those he perceives as responsible for his removal, including Columbia, members of the Columbia Department of Public Safety (i.e., the CU Individual Defendants), private security services contractors (defendants Allied Universal and Pinkerton), employees of Columbia's private security contractors, and the City of New York. Although the Columbia Defendants are all private actors, the Complaint asserts federal and state constitutional claims against them. Mr. Shuman also alleges that his rights were violated under State and City "right to record" statutes and asserts state common law claims for excessive force; false arrest; assault and battery; and intentional and negligent infliction of emotional distress.

**The Columbia Defendants' Anticipated Motion to Dismiss**

**The Section 1983 Claims**. Columbia intends to move to dismiss the Section 1983 claims for failure to adequately plead state action. It is well settled that Section 1983 liability lies only against state actors. *See, e.g., Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015). As the Second Circuit has recognized, however, "Columbia University and its employees are private [not state] actors." *Biswas v. Rouen*, 808 F. App'x 53, 54 (2d Cir. 2020).

Seeking to get around this fatal pleading problem, the Complaint alleges in vague terms, and solely "on information and belief," that "***some or all***" of the individual officer defendants were designated as "Special Patrolmen" and that the NYPD appointed 36 Columbia employees as "Special Patrolman," authorized to affect arrests under New York law. Compl. ¶¶ 40, 44 (emphasis added). These allegations are patently inadequate. First, the Second Circuit has specifically recognized that the designation of a private individual as a Special Patrolman does ***not*** transform that person into an arm of the State for all purposes. Rather, state action is implicated only when and to the extent that the officer takes an action that is made possible ***only*** because he was clothed with the authority of the state. *See Cancel v. Amakwe*, 551 F. App'x 4, 6–7 (2d Cir. 2013) ("City's delegation of police powers to private businesses" could not form the basis for state action, in itself, where security officer "was employed by a private business at the time of the alleged assault, and any authority he had over [plaintiff] . . . derived solely from that role and was not made possible only because he was 'clothed with the authority of state law'"). Indeed, private actors like Columbia have the right to enforce their own rules and remove people from their private property without invoking the State's authority. *See Kalfus v. N.Y. Presbyterian Hosp.*, 476 F. App'x 877, 878–79 (2d Cir. 2012) (private hospital's use of special patrolman to eject photographer from hospital property not state action). Columbia Public Safety therefore did not require the State's authority when it removed Plaintiff from Butler and detained him pending issuance of a summons. *See Milton v. Alverez*, 2005 WL 1705523, at *3 (S.D.N.Y. 2005) (dismissing Section 1983 complaint against Columbia Public Safety officer for absence of state action where officer handcuffed, detained, and escorted plaintiff to security office for trespassing).

Second, to the extent the Special Patrolman designation impacts the state action analysis, the non-specific, group allegation that "some or all" of the individual defendants had that authority is plainly inadequate under Rule 8 as to each of the Columbia Individual Defendants, ***none*** of whom in fact held that status on May 7, 2026. *See, e.g., Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (Rule 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests").

Finally, even if the Court were to accept as true the Complaint's false allegation that the CU Individual Defendants had Special Patrolmen status on May 7, 2026, the Section 1983 claims against Columbia still fail because "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees." *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 408 (S.D.N.Y. 2012). To hold Columbia responsible for the acts of any individual defendants, Plaintiff must plausibly allege the existence of a Columbia-sanctioned policy or custom that caused his injuries. *See Washington v. Eaton*, 2021 WL 3291658, at *20–21 (D. Conn. Aug. 2, 2021) ("[E]very circuit to have considered the issue has extended *Monell* to private entities, shielding employers from vicarious liability."). The Complaint makes no such allegation as to Columbia.

**The State Constitutional and State and City Statutory Claims.** Plaintiff's failure to establish state action also dooms his claim under the New York State Constitution, *see Lown v. Salvation Army, Inc.*, 393 F. Supp. 2d 223, 244 (S.D.N.Y. 2005), as well as the State and City right-to-record statutes. On the statutory claims, State law authorizes a private right of action only when an "officer" acts to interfere with a person's attempt to exercise their right to record "law enforcement activity." N.Y. Civ. Rights Law § 79-p (3). But that law defines an "officer" as someone engaged in "law enforcement activity," which is defined as activity by an officer "acting under color of law." *Id.* §§ 1(a) & (b). Similarly, the New York City equivalent statute establishes a right of action only when an officer interferes with an attempt to record "police activities," which is likewise defined as the activity of an officer "acting under color of law." N.Y.C. Code §§ 14-189 (c) & (a). We are aware of no case that applies these laws to private actors operating on private property. *Cf. Reyes v. City of New York*, -- N.E.3d --, 2026 WL 1790855, at *4 (N.Y. June 23, 2026) (State and City right-to-record laws do not apply within police stationhouses and lobbies; constitutional right to record generally applies "in the context of outdoor public spaces").

**The Remaining State Law Claims**. With the foregoing claims dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining claims, which all arise under New York State common law.

With respect to a briefing schedule, we propose that the parties confer after all parties have been served and appeared. We thank the Court for its consideration of this submission.

Respectfully submitted,

Andrew W. Schilling

cc: <u>**By ECF**</u>
All Counsel of Record