Arnall Golden Gregory LLP

171 17th Street NW
Suite 2100
Atlanta, GA 30363
Direct Phone: 404.873.8164
Email: megan.mitchell@agg.com

October 8, 2026

**By ECF**
The Honorable John P. Cronan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *Shuman v. The City of New York et al.*, No. 26-CV-03805-JPC (S.D.N.Y.)

Dear Judge Cronan:

In accordance with Individual Rule 6(A) of Your Honor's Individual Rules, we respectfully submit this letter on behalf of Defendant Pinkerton Consulting & Investigations Inc. ("Pinkerton") to request a pre-motion conference regarding Pinkerton's anticipated motion to dismiss the First Amended Complaint ("Complaint" or "FAC"). *See* ECF 40. The Columbia and Allied Defendants have separately filed pre-motion conference letters raising certain arguments applicable to all private defendants in this action. *See* ECF 57 and 69. The City of New York has also filed a pre-motion conference letter raising its defenses to the FAC. *See* ECF 74. Pinkerton shares many of the same grounds for dismissal raised by the Columbia and Allied Defendants and the City, but addresses its specific arguments in favor of dismissal below.

## I. Background

The Complaint alleges that on May 7, 2025, Plaintiff Fadi Shuman ("Plaintiff"), a Columbia University student, was assaulted and arrested by security personnel during a student protest at Columbia's Butler Library. FAC ¶¶ 55-88. The Complaint names Pinkerton as a private security contractor that allegedly "contracted with Defendant Columbia and/or Defendant City of New York to provide security and related services." FAC ¶ 17. This allegation is made solely "upon information and belief." *Id.*

The Complaint further incorrectly alleges, again solely on information and belief, that individual defendants Dalwayne Walcott and Victor Garcia "were, at all times relevant herein, employees of, and providing security and/or related services for, Defendant Pinkerton and/or Defendant Columbia." FAC ¶ 20. The Complaint also alleges that "some or all" of the Individual Defendants were designated as Special Patrolmen. FAC ¶ 22. But the Complaint does not specifically allege that Walcott or Garcia held Special Patrolman status, nor does Plaintiff allege any Pinkerton policy or custom that caused his claimed injuries, as required by Section 1983.

## II. Pinkerton's Anticipated Motion to Dismiss

**A. The Section 1983 Claims.** Pinkerton intends to move to dismiss the Section 1983 claims (Seventh through Tenth Claims) for failure to adequately plead state action. "To state a claim under § 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015). A "conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). It is well settled that "the acts of private security guards . . . do not constitute state action under § 1983." *Guiducci v. Kohl's Dep't Stores*, 320 F. Supp. 2d 35, 37 (E.D.N.Y. 2004); *see also Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 170 (S.D.N.Y. 2006). Pinkerton is a private security contractor, not a state actor.

Plaintiff's opposition to the Columbia Defendants' letter motion relied on two theories of state action: (1) the government coercion/compulsion theory under *Khalil v. Trustees of Columbia University*, 833 F. Supp. 3d 404 (S.D.N.Y. 2026), based on the federal government's cancellation of $400 million in grants to Columbia and Columbia's submission to federal demands regarding its treatment of pro-Palestine protesters; and (2) the "Special Patrolman" designation of 36 Columbia employees. *See* ECF 58. Neither theory has any application to Pinkerton. The FAC does not allege that Pinkerton is a private educational institution, that Pinkerton received federal funding that was cancelled, that Pinkerton was subject to any demands from the Trump Administration, or that Pinkerton adopted any policy in response to government pressure. No allegation in the Complaint connects Pinkerton to the government coercion that Plaintiff attributes to the Columbia Defendants.

As to the Special Patrolman designation, the FAC also does not allege that Walcott or Garcia specifically held that status. The vague group allegation that "some or all" of the Individual Defendants were Special Patrolmen (FAC ¶ 22) is insufficient to provide fair notice as to these particular individuals. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (Rule 8 "requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'"). Moreover, even if Walcott and Garcia were Special Patrolmen, which Pinkerton denies on information and belief, the Second Circuit has held that the "City's delegation of police powers to private businesses" cannot by itself form the basis for state action where a security officer "was employed by a private business at the time of the alleged assault, and any authority he had over [plaintiff] . . . derived solely from that role and was not made possible only because he was 'clothed with the authority of state law.'" *Cancel v. Amakwe*, 551 F. App'x 4, 6-7 (2d Cir. 2013). Private actors have the right to remove people from private property without invoking the State's authority. *See Kalfus v. N.Y. Presbyterian Hosp.*, 476 F. App'x 877, 878-79 (2d Cir. 2012); *see also Lloyd Corp. v. Tanner*, 407 U.S. 551, 570 (1972) (holding no state action in private property owner's prohibition on handbill distribution despite involvement of mall security officers vested with police authority in communicating prohibition).

Furthermore, even if state action could be established as to any individual defendant, Pinkerton as an entity cannot be held liable under § 1983 absent a policy or custom. "[P]rivate

employers are not liable under § 1983 for the constitutional torts of their employees . . . . to state a § 1983 claim against a private entity, a plaintiff must allege that an action pursuant to some official policy caused the constitutional deprivation." *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 432 (S.D.N.Y. 2012) (quoting *Rojas v. Alexander's Dep't Store*, 924 F.2d 406, 408-09 (2d Cir. 1990)). The Supreme Court has held that the unconstitutional acts of an individual employee under § 1983 do not confer liability upon her employer; liability under § 1983 attaches only when an entity has "caused" a constitutional deprivation. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 692 (1978). At the pleading stage, a plaintiff "must give a factual description of such a policy, not just bald allegations that such a thing existed." *Bess v. City of N.Y.*, 2013 U.S. Dist. LEXIS 39765, at *3-4 (S.D.N.Y. Mar. 19, 2013). The FAC contains no allegation of any Pinkerton-sanctioned policy or custom that caused Plaintiff's injuries. *See Ortiz v. Parkchester N. Condo.*, 2018 U.S. Dist. LEXIS 100069, at *13-14 (S.D.N.Y. June 13, 2018) (dismissing *Monell* claim against private employer of special patrolmen where plaintiff failed to allege policy or custom).

**B. The State Constitutional and State and City Statutory Claims.** Plaintiff's claim under the New York State Constitution (Sixth Claim) likewise requires state action. *See Lown v. Salvation Army, Inc.*, 393 F. Supp. 2d 223, 244 (S.D.N.Y. 2005). For the same reasons the § 1983 claims fail against Pinkerton, so too does this claim. The right-to-record statutes, N.Y. Civ. Rights Law § 79-P (Twelfth Claim) and N.Y.C. Admin. Code § 14-189 (Thirteenth Claim), authorize a private right of action only when an "officer" acts to interfere with a person's attempt to exercise their right to record "law enforcement activity." N.Y. Civ. Rights Law § 79-P(3). But that law defines an "officer" as someone engaged in "law enforcement activity," which is defined as activity by an officer "acting under color of law." *Id.* §§ 1(a) & (b). Similarly, the New York City equivalent statute establishes a right of action only when an officer interferes with an attempt to record "police activities," which is likewise defined as the activity of an officer "acting under color of law." N.Y.C. Code §§ 14-189 (c) & (a). *Cf. Reyes v. City of New York*, -- N.E.3d --, 2026 NY Slip Op 03914, at *5 (N.Y. June 23, 2026) (discussing the legislative intent to focus right-to-record statutes on activity in <u>public</u> spaces).

**C. The Remaining State Law Claims.** With the federal and state statutory claims dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining state common law claims (false arrest, assault, battery, and intentional and negligent infliction of emotional distress), which all arise under New York State common law. *See* 28 U.S.C. § 1367(c)(3).

With respect to a briefing schedule, Pinkerton joins the other defendants in proposing that the parties confer after all parties have been served and appeared.

Respectfully submitted,

ARNALL GOLDEN GREGORY LLP

Megan Mitchell

Megan P. Mitchell

cc: All Counsel of Record (via ECF)

4929-0547-4255.v4