COHEN & GREEN

**By ECF** October 14, 2026

The Honorable John P. Cronan
United States District Court, Southern District of New York

**Re:** *Shuman v. The City of New York et al.*, 26-CV-03805 (JPC)

Dear Judge Cronan:

We represent Plaintiff and write pursuant to Rule 6A of Your Honor's Individual Rules in response to the letter from Defendant Pinkerton Consulting & Investigations Inc. ("Pinkerton") requesting a pre-motion conference in anticipation of its motion to dismiss the First Amended Complaint ("FAC"). ECF 77. Because Pinkerton largely adopts the arguments of its co-defendants, ECF 57, 69, and 74, Plaintiff incorporates his responses to those letters, as well, ECF .[1]

**Plaintiff has Adequately Pled State Action in Accordance with Rule 8.** Rule 8 dismissal "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004). Where complaint gives Defendants fair notice of the claims and their grounds, that suffices – a plaintiff need not set out every fact supporting those claims. *Id.* That that the FAC does not identify which individual defendants held Special Patrolman appointments does not render the allegations unintelligible or deprive Pinkerton of fair notice. This is particularly true where their precise appointment and employment status is information that is uniquely ascertainable by Defendants. Plaintiff's inability to independently verify those details at the pleading stage does not, standing alone, warrant dismissal. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (pleading on information is permissible where the relevant facts are "peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.") Moreover, Pinkerton itself disputes their Special Patrolman status only "on information and belief." ECF 77 at 2. Pinkerton's assertion that the FAC "incorrectly" alleges their employment, *Id.* at 1, is a factual dispute that cannot be resolved on a motion to dismiss. Nor is this case analogous to *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) upon which Pinkerton relies. Unlike a complaint that indiscriminately groups defendants together without an intelligible factual basis for the claims asserted, or any basis upon which to distinguish defendants, the FAC sets forth a concrete factual narrative and an identifiable theory of liability. See *Wynder*, 360 F.3d at 79–80; FAC ¶¶ 66–73, 79 The absence of a defendant-by-defendant accounting of Special Patrolman appointment status does not render that narrative unintelligible or, on its own, deprive Pinkerton of fair notice.

**Whether Pinkerton is otherwise liable under §1983 implicates factual disputes requiring discovery.** First on this point, a private party who is a "willful participant in joint activity with the State or its agents" acts under color of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). The FAC alleges that Walcott and Garcia, acting at the diretion of a Columbia supervisor, worked in hand with other Individual

[1] Notably, no counsel have appeared for Defendants Walcott and Garcia, based on whose conduct Pinkerton may have liability. However, because Pinkerton's letter addresses the pleadings as they relate to Walcott and Garcia as well as Pinkerton, Plaintiff mentions Walcott and Garcia here, too.

Defendants—at least some Special Patrolmen, FAC ¶¶ 22, 44—to seize, restrain, handcuff, and detain Plaintiff, *id.* ¶¶ 66–83 – conduct that amounts to state action itself. The City concedes that Special Patrolmen act under color of law. ECF 74 at 3.

Second, Pinkerton's authorities concern private guards exercising the authority any property owner has to remove people from private property. *See* ECF 77 at 2. Plaintiff was not simply escorted out of Butler Library. He was handcuffed, placed in a public safety vehicle, detained for hours, and released with two summonses charging him with Penal Law offenses, which were later dismissed and sealed. FAC ¶¶ 79–88. A private property owner has no power to arrest and issue criminal process; Special Patrolmen do, solely by virtue of their NYPD appointment. *Id.* ¶¶ 42–43. The arrest and charging of Plaintiff were therefore "made possible only because" Defendants were "clothed with the authority of state law", the very circumstance *Cancel* found lacking. 551 F. App'x at 4-6. Whether Walcott and Garcia were themselves Special Patrolmen, or acted jointly with those who were, is a factual question requiring discovery.

Third, Pinkerton misunderstands he government-coercion theory, ECF 77 at 2. State action attaches to the challenged conduct, Columbia's May 7, 2025 crackdown, undertaken to demonstrate compliance with federal demands, FAC ¶¶ 35, 39, 92–94 and not to whether each participant independently received federal funds or federal demands. Pinkerton contracted to provide security on Columbia's campus, *id.* ¶ 17, and its personnel carried out that crackdown at the direction of a Columbia supervisor, *id.* ¶¶ 20, 66–79. Responding to the federal government's demands, Pinkerton contracted with Defendant Columbia University and/or Defendant City to provide security, and the Individual Defendants employed by Pinkerton exercised police powers as Special Patrolmen pursuant to a governmental appointment. FAC ¶¶ 15, 19, 22, 26. A contractor that serves as the instrument of coerced conduct cannot escape liability because the coercion was directed at its principal.

Finally on this point, Pinkerton's contention it cannot be liable absent a Pinkerton policy or custom. That argument is premature to the extent it depends on factual questions concerning Pinkerton's policies and its role in the Special Patrolman program.

**Plaintiff Has Pled State Action Under New York's More Flexible Constitutional Standard.** Pinkerton conflates the federal state-action standard with the distinct standard governing claims under the New York Constitution, which the Court of Appeals has recognized as "more flexible" than its federal counterpart. *SHAD Alliance v. Smith Haven Mall*, 66 N.Y.2d 496, 505 (1985); *see also Sharrock v. Dell Buick-Cadillac, Inc.*, 45 N.Y.2d 152, 158–60 (1978).

Pinkerton's policy-or-custom argument, ECF 77 at 2–3, goes only to Pinkerton's own 1983 liability. Pinkerton's liability on the state law claims requires no policy or custom. Nonethless, the FAC alleges that Pinkerton failed to adequately train or supervise the personnel it deployed on probable cause to arrest, use of force, and the right to record, FAC ¶ 45, and that each Defendant was responsible for creating and implementing the practices at issue, *Id.* ¶ 27. The terms of Pinkerton's contract with Columbia and/or the City, the training it provided, and the instructions it gave its personnel for the May 7 response are all in Pinkerton's possession and are appropriate for the subject



Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com

of discovery. *See Arista Records*, 604 F.3d at 120. The state constitutional inquiry considers, among other things, the source of the challenged authority, the State's involvement in the conduct, and whether governmental functions have been delegated to private parties. *SHAD Alliance*, 66 N.Y.2d at 505. Here, the FAC alleges facts concerning the Special Patrolman designation and the governmental authority exercised by the security personnel, FAC ¶¶ 40–45, which plausibly establish state action under New York's more flexible standard.

**Plaintiff Sufficiently Pled the Color of Law Requirement Under the Right to Record Acts.** Pinkerton likewise conflates the federal state-action doctrine governing § 1983 claims with the distinct statutory requirements of the New York State and City Right to Record Acts ("RTR Acts"). The City statute expressly defines an "officer" to include a "special patrolman appointed by the police commissioner pursuant to section 14-106," while the State statute expressly encompasses a "security officer" or "security guard." N.Y.C. Admin. Code § 14-189(a); N.Y. Civ. Rights Law § 79-p(1)(a). Significantly, both statutes provide remedies "*in addition to*" those available under § 1983 and the federal and New York State Constitutions. N.Y. Civ. Rights Law § 79-p(1), (3), (4); N.Y.C. Admin. Code § 14-189(a), (c), (d). (emphasis added). These express provisions confirm that the RTR Acts must be analyzed according to their own terms, rather than simply importing the federal §1983 state-action analysis. By expressly listing "security officer[s]" and "security guard[s]" among covered officers, N.Y. Civ. Rights Law § 79-p(1)(a), the Legislature promulgated that private security personnel can engage in covered law enforcement activity; Pinkerton's reading attempts to circumvent that language. Nor does *Reyes v. City of New York*, 2026 NY Slip Op 03914 (N.Y. June 23, 2026), assist Pinkerton. *Reyes* held only that the RTR Acts do not protect recording inside police stationhouse lobbies, expressly declined to define the Acts' full scope, and rested on concerns specific to stationhouses, such as the privacy of victims, witnesses, and informants. None of those concerns applies to a student documenting a protest in his own university library. Nonetheless, Walcott and Garcia acted under color of law when they seized, handcuffed, and detained Plaintiff in an arrest that culminated in criminal summonses. FAC ¶¶ 61–84, 166–188. The FAC further alleges that Defendants interfered with Plaintiff's recording through physical force, detention, arrest, and the issuance of summonses. Taken together, these allegations plausibly establish that Defendants acted as covered officers in connection with law-enforcement activity and satisfy the RTR Acts' requirements at the pleading stage. Pinkerton's reliance on federal state-action principles cannot independently establish that these statutory claims must be dismissed.

**The Court Should Excersize Jurisdiction Over the Remaining Claims.** Finally, Pinkerton's request that the Court decline supplemental jurisdiction over the state common-law claims is premature. Not only would doing so cause this incident to be litigated in two courts thereby risking conflicting decisions and wasting judicial resources, but also S 28 U.S.C. 1367(c)(3) applies only where the Court "has dismissed all claims over which it has original jurisdiction." Federal claims may remain against the other Defendants regardless of Pinkerton's motion, and the state-law claims against Pinkerton arise from the same incident and the same nucleus of operative fact. *Id.*

Plaintiff intends to oppose Pinkerton's anticipated motion for the foregoing reasons. Plaintiff agrees with Defendants' proposal regarding a briefing schedule. Plaintiff further reserves the right to amend his Complaint to cure any deficiencies, pursuant to FRCP Rule 15(a)(1)(B).



Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com

We thank the Court for its consideration of this submission.

Respectfully submitted,

**COHEN&GREEN P.L.L.C.**

By: ______________________
Leena M. Widdi
1639 Centre Street, Suite 216
Ridgewood, NY 11385
(929) 888-9480
leena@femmelaw.com

**GIDEON ORION OLIVER**

______________________
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

**THE ABOUSHI LAW FIRM P.L.L.C.**

______________________
Tahanie A. Aboushi, Esq.
1441 Broadway, 5th Floor
New York, NY 10018
t: (212) 391-8500
tahanie@aboushi.com

*Attorneys for Plaintiff*