Arnall Golden Gregory LLP

171 17th Street NW
Suite 2100
Atlanta, GA 30363
Direct Phone: 404.873.8164
Email: megan.mitchell@agg.com

October 19, 2026

**By ECF**
The Honorable John P. Cronan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *Shuman v. The City of New York et al.*, No. 26-CV-03805-JPC (S.D.N.Y.)

Dear Judge Cronan:

In accordance with Individual Rule 6(A) of Your Honor's Individual Rules, we respectfully submit this letter on behalf of Defendant Dalwayne Walcott ("Mr. Walcott") to request a pre-motion conference regarding Mr. Walcott's anticipated motion to dismiss the First Amended Complaint ("Complaint" or "FAC"). *See* ECF 40. The Columbia and Allied Defendants have separately filed pre-motion conference letters raising certain arguments applicable to all private defendants in this action. *See* ECF 57 and 69. The City of New York has also filed a pre-motion conference letter raising its defenses to the FAC. *See* ECF 74. Defendant Pinkerton Consulting & Investigations Inc. ("Pinkerton") likewise filed a pre-motion conference letter (ECF 77), to which Mr. Walcott joins but addresses his specific arguments in favor of dismissal below.

## I. Background

The Complaint alleges that on May 7, 2025, Plaintiff Fadi Shuman ("Plaintiff"), a Columbia University student, was assaulted and arrested by security personnel during a student protest at Columbia's Butler Library. FAC ¶¶ 50-88. The Complaint names Pinkerton as a private security contractor that allegedly "contracted with Defendant Columbia and/or Defendant City of New York to provide security and related services." FAC ¶ 17. This allegation is made solely "[u]pon information and belief." *Id.* The Complaint further incorrectly alleges, again solely on information and belief, that individual defendants Mr. Walcott and Victor Garcia ("Mr. Garcia") "were, at all times relevant herein, employees of, and providing security and/or related services for, Defendant Pinkerton and/or Defendant Columbia." FAC ¶ 20. The Complaint also alleges that "some or all" of the Individual Defendants were designated as Special Patrolmen. FAC ¶ 22. But the Complaint does not specifically allege that Mr. Walcott or Mr. Garcia held Special Patrolman status, nor does Plaintiff allege any Pinkerton policy or custom that caused his claimed injuries, as required by Section 1983.

## II. Mr. Walcott's Anticipated Motion to Dismiss

**A. The Section 1983 Claims.** Mr. Walcott intends to move to dismiss the Section 1983 claims (Seventh through Tenth Claims) for failure to adequately plead state action. "To state a claim under § 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015). The FAC does not plausibly allege that Mr. Walcott acted under color of state law. A "conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). It is well settled that "the acts of private security guards . . . do not constitute state action under § 1983." *Guiducci v. Kohl's Dep't Stores*, 320 F. Supp. 2d 35, 37 (E.D.N.Y. 2004); *see also Provisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 170 (S.D.N.Y. 2006). Pinkerton is a private security contractor, not a state actor.

Turning to the specific allegations against Mr. Walcott, the FAC alleges that he, along with several other Individual Defendants, "surrounded [Plaintiff] and pushed and yanked him down the stairs," "pushed [Plaintiff] down a hallway," "lifted [Plaintiff] up and slammed him onto the ground," "held [Plaintiff] onto the ground for an extended period of time, pushing his head into the ground, choking him, and striking him," and "eventually placed [Plaintiff] in handcuffs and escorted [Plaintiff] to an elevator." FAC ¶¶ 68, 70, 72-73. This alleged conduct is not actionable under Section 1983 because the FAC fails to plead any "government nexus." *See Kalfus v. N.Y. Presbyterian Hosp.*, 476 F. App'x 877, 879 (2d Cir. 2012) ("In the absence of any government nexus to the challenged action . . . the First Amendment does not prevent a property owner from restricting press access to private property."). Mr. Walcott was engaged during the Butler Library protest as a private security guard on private university property. Unlike in *Khalil v. Trs. of Columbia Univ. in the City of N.Y.*, 833 F. Supp. 3d 404 (S.D.N.Y. 2026), the FAC does not, and cannot, tie Mr. Walcott's alleged actions to its allegations about demands made by the federal government. FAC ¶¶ 35-36; *cf. Khalil*, 833 F. Supp. 3d at 427-30 (holding plaintiffs adequately alleged state action where Columbia allegedly undertook specific actions based on specific directions from the federal government).

As to the Special Patrolman designation, the FAC also does not allege that Mr. Walcott was appointed as a Special Patrolman or that he exercised authority arising from such appointment. Instead, the FAC only vaguely alleges that "some or all" of the Individual Defendants were Special Patrolmen (FAC ¶ 22). Nor does the FAC plead that any specifically identified Special Patrolmen coordinated or directed Mr. Walcott. Its pleading is entirely conclusory and made upon information and belief. Further, the Second Circuit has held that the "City's delegation of police powers to private businesses" cannot by itself form the basis for state action where a security officer "was employed by a private business at the time of the alleged assault, and any authority he had over [plaintiff] . . . derived solely from that role and was not made possible only because he was 'clothed with the authority of state law.'" *Cancel v. Amakwe*, 551 F. App'x 4, 6-7 (2d Cir. 2013). Private actors have the right to remove people from private property without invoking the State's authority. *See Kalfus v. N.Y. Presbyterian Hosp.*, 476 F. App'x 877, 878-79 (2d Cir. 2012); *see also Lloyd Corp. v. Tanner*, 407 U.S. 551, 570 (1972) (holding no state action in private property owner's prohibition on handbill distribution despite involvement

of mall security officers vested with police authority in communicating prohibition). Similarly, the FAC does not allege any government "pressure" applied directly to Mr. Walcott.

**B. The State Constitutional and State and City Statutory Claims.** Plaintiff's claim under the New York State Constitution (Sixth Claim) likewise requires state action. *See Lown v. Salvation Army, Inc.*, 393 F. Supp. 2d 223, 244 (S.D.N.Y. 2005). For the same reasons the § 1983 claims fail against Mr. Walcott, so too does this claim. The right-to-record statutes, N.Y. Civ. Rights Law § 79-P (Twelfth Claim) and N.Y.C. Admin. Code § 14-189 (Thirteenth Claim), authorize a private right of action only when an "officer" acts to interfere with a person's attempt to exercise their right to record "law enforcement activity." N.Y. Civ. Rights Law § 79-P(3). But that law defines an "officer" as someone engaged in "law enforcement activity," which is defined as activity by an officer "acting under color of law." *Id.* §§ 1(a) & (b). Similarly, the New York City equivalent statute establishes a right of action only when an officer interferes with an attempt to record "police activities," which is likewise defined as the activity of an officer "acting under color of law." N.Y.C. Code §§ 14-189 (c) & (a). *Cf. Reyes v. City of New York*, -- N.E.3d --, 2026 NY Slip Op 03914, at *5 (N.Y. June 23, 2026) (discussing the legislative intent to focus right-to-record statutes on activity in <u>public</u> spaces). Again, the FAC does not allege that Mr. Walcott was appointed as a Special Patrolman, that the State delegated police authority to him, or that he exercised any such authority during the incident. These claims therefore lack any factual basis for treating Mr. Walcott's conduct as governmental action.

**C. The Remaining State Law Claims.** With the federal and state statutory claims dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining New York common law claims (false arrest, assault, battery, and intentional and negligent infliction of emotional distress). *See* 28 U.S.C. § 1367(c)(3).

With respect to a briefing schedule, Mr. Walcott joins the other defendants in proposing that the parties confer after all parties have been served and appeared.

Respectfully submitted,

ARNALL GOLDEN GREGORY LLP

Megan Mitchell

Megan P. Mitchell

cc: All Counsel of Record (via ECF)